**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CHARLES AMAR, NIKOLAY KOLEV, and SARAH POTWIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRUSTEES OF BOSTON UNIVERSITY,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT – CLASS ACTION**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Charles Amar, Nikolay Kolev, and Sarah Potwin (together, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Class Action Complaint (the "Action") against Trustees of Boston University ("Defendant"), and allege upon personal knowledge as to Plaintiffs and Plaintiffs' own actions, and upon information and belief as to all other matters, as follows:

## I. NATURE OF THE ACTION

1. Plaintiffs bring this Class Action Complaint against Defendant for its failure to secure and safeguard personally identifiable information that was entrusted to Defendant.

2. Upon information and belief, Defendant experienced a data security incident in which an unauthorized actor gained access to Defendant's computer systems containing the sensitive personal data of Plaintiffs and other current and former students, applicants, and employees of Defendant, including names, addresses, telephone numbers, dates of birth, email addresses, Social Security numbers, passport and visa records, enrollment, course, and grade records, and payment records (the "Private Information"). On or about November 1, 2026, threat-intelligence services reported that a threat actor had published on an underground forum an archive

of approximately 8 gigabytes that the actor claimed was taken from Boston University and that contained more than 2 million rows of data.[1]

3. Defendant operates Boston University, a private nonprofit research university headquartered in Boston, Massachusetts. In the course of enrolling and employing tens of thousands of individuals, Defendant collects and stores their Private Information. Defendant, as a large and well-resourced institution, had the resources available to take seriously the obligation to protect Private Information. However, Defendant failed to invest the resources necessary to protect the Private Information of Plaintiffs and Class members.

4. The actions of Defendant related to the Data Breach (as defined below) are unconscionable. Upon information and belief, Defendant failed to implement practices and systems to mitigate against the risks posed by Defendant's highly deficient IT practices. As a result of these failures, Plaintiffs and Class members face a litany of harms that accompany data breaches of this magnitude and severity.

5. As such, Plaintiffs, on behalf of themselves and all others similarly situated, bring this Action for restitution, actual damages, nominal damages, injunctive relief, disgorgement of profits, and all other relief that this Court deems just and proper.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this Action pursuant to 28 U.S.C. § 1332(d), as provided by the Class Action Fairness Act, because this is a civil action filed under Rule 23 of the Federal Rules of Civil Procedure; the amount in controversy exceeds

[1] Dark Web Intelligence (@DailyDarkWeb), X (Nov. 1, 2026, 7:04 AM ET), https://x.com/DailyDarkWeb/status/2116863997081440339 (last visited Nov. 11, 2026).

$5,000,000, exclusive of interest and costs; there are more than 100 members of the Class; and at least one member of the Class is a citizen of a state different from that of Defendant.

7. This Court has personal jurisdiction over Defendant because, upon information and belief, a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and Defendant is incorporated in, and maintains its principal place of business in, this District.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this District and, upon information and belief, a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Assignment to the Eastern Division is proper under Local Rule 40.1(d) because Defendant resides in Boston, Suffolk County, Massachusetts.

## III. PARTIES

9. Plaintiff Charles Amar is a resident and citizen of New York. Plaintiff Amar is a former student at Boston University. As a condition of enrollment with Boston University, Plaintiff Amar was required to provide Defendant with his Private Information. Upon information and belief, Plaintiff Amar's Private Information was maintained in Defendant's systems and was compromised in the Data Breach (as defined below).

10. Plaintiff Nikolay Kolev is a resident and citizen of New York. Plaintiff Kolev is a former student at Boston University. As a condition of enrollment with Boston University, Plaintiff Kolev was required to provide Defendant with his Private Information. Upon information and belief, Plaintiff Kolev's Private Information was maintained in Defendant's systems and was compromised in the Data Breach (as defined below).

11. Plaintiff Sarah Potwin is a resident and citizen of New York. Plaintiff Potwin is a former student at Boston University. As a condition of enrollment with Boston University,

Plaintiff Potwin was required to provide Defendant with Plaintiff Potwin's Private Information. Upon information and belief, Plaintiff Potwin's Private Information was maintained in Defendant's systems and was compromised in the Data Breach (as defined below).

12. Defendant Trustees of Boston University is a Massachusetts nonprofit corporation chartered under Massachusetts law, with its principal place of business located at One Silber Way, Boston, Massachusetts 02215. Defendant operates Boston University.

## IV. FACTUAL ALLEGATIONS

### *A. Defendant's Business and Collection of Private Information*

13. Defendant was chartered in 1869 and operates Boston University, a private nonprofit research university with its main campus in Boston, Massachusetts. In fall 2024, Defendant enrolled 38,093 students, and in 2024/2025 it employed 11,532 faculty and staff. Defendant reports 460,478 living alumni and reported more than $2.6 billion in total operating revenue for fiscal year 2024, including approximately $1.36 billion in net student tuition and fees.[2]

14. In the course of doing business, Defendant has acquired a significant amount of highly sensitive and valuable Private Information from its current and former students, applicants, and employees, including Plaintiffs and Class members.

15. As a condition of their enrollment at or employment with Defendant, Plaintiffs and Class members trusted that Defendant would use their data only for educational and business purposes in a manner that was safe and secure.

16. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class members' Private Information, Defendant assumed legal and equitable duties and knew or should

---

[2] Boston University, *Analytical Servs. & Institutional Rsch., Fact Sheet 2024/2025*, at 1-2, https://www.bu.edu/asir/files/2025/07/G3b-Fact-Sheet-FY2025.pdf (last visited Nov. 11, 2026).

have known that it was responsible for ensuring the safety and security of Plaintiffs' and Class members' Private Information and for protecting such Private Information from unauthorized disclosure and exfiltration.

17. Plaintiffs and Class members relied on Defendant to keep their Private Information confidential and only to make authorized disclosures of this Private Information, which Defendant failed to do.

***B. The Data Breach***

18. Upon information and belief, on or before November 1, 2026, an unauthorized third party gained access to Defendant's computer systems and exfiltrated data from them (the "Data Breach"). Upon information and belief, the exfiltrated data includes the sensitive personal data of Plaintiffs and other current and former students, applicants, and employees of Defendant, including but not necessarily limited to names, addresses, telephone numbers, dates of birth, email addresses, Social Security numbers, passport and visa records, enrollment, course, and grade records, and payment records.

19. On or about November 1, 2026, threat-intelligence services reported that a threat actor had published on an underground forum an archive of approximately 8 gigabytes that the actor claimed was taken from Boston University.[3] According to the report, the threat actor listed more than 2 million rows of data across several files.

20. Upon information and belief, as of the date of this Complaint, Defendant has not publicly confirmed the Data Breach.

21. The precise number of distinct individuals impacted by the Data Breach, and the records affected for each individual, have yet to be determined. However, on information and

[3] Dark Web Intelligence, *supra* note 1.

belief, the total number of individuals whose Private Information was compromised in the Data Breach may be in the tens or hundreds of thousands.

22. The threat actor's publication of an archive it claims was taken from Defendant, and its claim to possess specific categories and quantities of Boston University data, indicate that the Private Information was not merely exposed but was accessed, acquired, and exfiltrated by criminals who intend to monetize it, whether by publishing or selling the data.

23. On information and belief, the Private Information compromised in Defendant's files accessed by the threat actor was not encrypted. In any event, the threat actor was able to access the Private Information.

24. The access and/or acquisition of the Private Information from Defendant's systems demonstrates that this cyberattack was targeted due to Defendant's status as an institution that houses sensitive Private Information. Armed with this Private Information, data thieves (as well as downstream purchasers of the stolen Private Information) can commit a variety of crimes, including as follows: opening new financial accounts in Class members' names, taking out loans in Class members' names, using Class members' information to obtain government benefits, filing fraudulent tax returns using Class members' identification information, obtaining driver's licenses in Class members' names but with different photographs, and giving false information to police during any arrests.

25. Due to Defendant's flawed security measures and Defendant's inadequate response to the Data Breach, Plaintiffs and Class members now face a present, substantial, and imminent risk of fraud and identity theft and must deal with that threat forever.

26. Despite widespread knowledge of the dangers of identity theft and fraud associated with cyberattacks and unauthorized disclosure of Private Information, and despite Defendant's

large operating budget, Defendant maintained unreasonably deficient protections prior to the Data Breach, including, but not limited to, a lack of security measures for storing and handling Private Information, as well as inadequate employee training regarding how to access, oversee the protection of, and handle and safeguard this sensitive set of information.

27. Defendant also failed to adequately adopt and train its employees on even the most basic of information security protocols, including storing, locking, encrypting, and limiting access to Plaintiffs' and Class members' highly sensitive Private Information; implementing guidelines for accessing, maintaining, and communicating sensitive Private Information; and protecting sensitive Private Information by implementing protocols on how to utilize, store, and handle such information.

28. Defendant's failures caused the unpermitted disclosure of Plaintiffs' and Class members' Private Information to unauthorized third-party cybercriminals, and have put Plaintiffs and Class members at serious, immediate, and continuous risk of identity theft and fraud.

29. The Data Breach that exposed Plaintiffs' and Class members' Private Information was caused by Defendant's violation of its obligations to abide by best practices and industry standards concerning its information security practices and processes.

30. Defendant, despite being a technologically advanced organization, failed to comply with basic security standards or to implement security measures that could have prevented or mitigated the Data Breach.

31. Defendant failed to ensure that all personnel with access to Plaintiffs' and Class members' Private Information were properly trained in retrieving, handling, using, and distributing sensitive information. Defendant's personnel were also not properly trained to apply relevant updates and software patches.

### *C. The Data Breach Was Foreseeable*

32. Defendant has weighty obligations created by industry standards and common law to keep Private Information confidential and to protect it from unauthorized access and disclosure.

33. Plaintiffs and Class members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

34. Defendant's data security obligations were particularly acute given the substantial increase in hacks, malware threats, ransomware attacks, and/or other data breaches in various industries, including the industry in which Defendant operates, preceding the date of the Data Breach.

35. Defendant was aware of the risk of data breaches because such breaches have dominated the headlines in recent years.

36. Indeed, Defendant has experienced repeated data security incidents in recent years. In 2024, Defendant was subject to an email phishing campaign that compromised a Boston University email account containing a W-9 form with individuals' names, addresses, and Social Security numbers.[4] In 2025, Defendant reported being subject to yet another phishing attack beginning on December 23, 2024, which had compromised two Boston University School of Law clinic email accounts containing individuals' names, addresses, driver's license information, and Social Security numbers.[5] And Defendant reportedly notified all 15,448 participants in the Boston

---

[4] Mass. Office of Consumer Affs. & Bus. Regul., *Data Breach Notification Letter No. 2024-1823 (Trustees of Boston University)*, https://www.mass.gov/doc/2024-1823-trustees-of-boston-university/download (last visited Nov. 11, 2026).

[5] Mass. Office of Consumer Affs. & Bus. Regul., *Data Breach Notification Letter No. 2025-425 (Trustees of Boston University on behalf of Boston University Law School)*, https://www.mass.gov/doc/2025-425-trustees-of-boston-university-on-behalf-of-boston-university-law-school/download (last visited Nov. 11, 2026).

University-led Framingham Heart Study that a September 8, 2024 cyberattack had resulted in hackers obtaining their personal and medical information.[6]

37. Private information, like the Private Information accessed in the Data Breach, is of great value to hackers and cybercriminals, and the data compromised in the Data Breach can be used in a variety of unlawful manners. Private Information can be used to distinguish, identify, or trace an individual's identity. This can be accomplished alone or in combination with other personal or identifying information that is connected or linked to an individual, such as the information compromised in the Data Breach.

38. Given the nature of the Data Breach, it is foreseeable that the compromised Private Information can now be used by hackers and cybercriminals in a variety of different and harmful ways.

39. Cybercriminals who possess Plaintiffs' and Class members' Private Information can (either in isolation or in tandem with other information) obtain Plaintiffs' and Class members' tax returns or open fraudulent credit card or other types of accounts in Plaintiffs' and Class members' names.

40. The increase in such attacks, and attendant risk of future attacks, was widely known to Defendant.

41. As such, this Data Breach was foreseeable. Defendant was cognizant of the huge risk of data breaches because of how common and high-profile data breaches have become with respect to businesses that have custody of Private Information, such as Defendant.

---

[6] HIPAA Journal, *Hackers Obtained the Data of BU Framingham Heart Study Participants*, https://www.hipaajournal.com/framingham-heart-study-data-breach/ (last visited Nov. 10, 2026).

### *D. Defendant Failed to Follow FTC Guidelines and Industry Standards*

42. Experts studying cybersecurity routinely identify organizations that collect and store sensitive personally identifiable information, including Private Information, as being particularly vulnerable to cyberattacks because of the value of the data which they collect and maintain. The reason this data is so valuable is because it can be sold and weaponized for purposes of committing various identity theft-related crimes. It is well-known that, because of the value of this data and Private Information, businesses that collect, store, maintain, and otherwise utilize or profit from Private Information must take necessary cybersecurity safeguards to ensure that the data they possess is adequately protected.

43. Government agencies also highlight the importance of cybersecurity practices. For example, the Federal Trade Commission ("FTC") has promulgated numerous guides for businesses, which highlight the importance of implementing reasonable data security practices.

44. According to the FTC, the need for data security should be factored into all business decision-making.

45. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.

46. The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand network vulnerabilities; and implement policies to correct any security problems.

47. The guidelines also recommend that businesses use an intrusion detection system to detect and expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack their systems; watch for large amounts of data being

transmitted from their systems; and have a response plan ready in the event of a breach.

48. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on their network; and verify that third-party service providers have implemented reasonable security measures.

49. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, in some cases treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"). Orders resulting from these actions further explicate and clarify the measures businesses must take to meet their data security obligations.

50. Defendant failed to properly implement some or all of these (and other) basic data security practices.

51. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

52. Defendant at all times was fully aware of its obligations to protect Private Information. Defendant was also keenly aware of the significant repercussions that would result from the failure to do so.

53. Several best practices have been identified that, at a minimum, should be implemented by businesses such as Defendant that maintain Private Information. These include, but are not limited to, the following: educating all employees about cybersecurity; requiring strong

passwords; maintaining multi-layer security, including firewalls, anti-virus programs, and anti-malware software; utilizing encryption; making data unreadable without a key; implementing multifactor authentication; backing up data; and limiting which particular employees can access sensitive data.

54. Other best cybersecurity practices that are standard in the industry include installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding critical points.

55. These foregoing frameworks are existing and applicable industry standards. Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

***E. Defendant Failed to Meet Data Security Requirements Applicable to Universities***

56. Upon information and belief, Defendant participates in the federal student financial aid programs authorized under Title IV of the Higher Education Act of 1965, as amended. As a result, Defendant is subject to the Standards for Safeguarding Customer Information (the "Safeguards Rule"), 16 C.F.R. Part 314, which the FTC promulgated under the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801–6809.

57. The U.S. Department of Education has advised that "[e]ach institution that participates in the Title IV programs has agreed in its Program Participation Agreement (PPA) to comply with the GLBA Safeguards Rule under 16 C.F.R. Part 314." The Department has further advised that, for purposes of an institution's compliance with the Gramm-Leach-Bliley Act, customer information is information obtained as a result of providing a financial service to a past

or present student, including by administering the Title IV programs.[7]

58. The Safeguards Rule requires a covered institution to develop, implement, and maintain a comprehensive information security program containing administrative, technical, and physical safeguards appropriate to the institution's size and complexity, the nature and scope of its activities, and the sensitivity of the customer information at issue. 16 C.F.R. § 314.3(a).

59. Defendant is also subject to the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, and its implementing regulations, 34 C.F.R. Part 99, which protect the privacy of student education records and generally prohibit institutions that receive federal education funds from disclosing personally identifiable information from education records without consent.

60. In addition, Massachusetts regulations require every person that owns or licenses personal information about a resident of the Commonwealth to develop, implement, and maintain a comprehensive written information security program containing administrative, technical, and physical safeguards, including, to the extent technically feasible, encryption of records and files containing personal information that are transmitted across public networks or stored on laptops or other portable devices. 201 C.M.R. §§ 17.03, 17.04.

61. These statutes and regulations, together with the FTC guidance and industry standards described above, inform the standard of care that Defendant owed Plaintiffs and Class members. Upon information and belief, Defendant failed to comply with them.

---

[7] U.S. Dep't of Educ., Fed. Student Aid, Electronic Announcement GENERAL-23-09, *Updates to the Gramm-Leach-Bliley Act Cybersecurity Requirements* (Feb. 9, 2023), https://fsapartners.ed.gov/knowledge-center/library/electronic-announcements/2023-02-09/updates-gramm-leach-bliley-act-cybersecurity-requirements (last visited Nov. 10, 2026).

### *F. Defendant's Breaches of Its Obligations*

62. Defendant breached its obligations to Plaintiffs and Class members because Defendant failed to properly maintain, oversee, and safeguard its computer systems, network, and data. In addition to its obligations under federal and state law, Defendant owed a duty to Plaintiffs and Class members to exercise reasonable care when obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, or misused by unauthorized persons. Defendant owed a duty to Plaintiffs and Class members to provide reasonable security, including complying with industry standards and requirements, providing training for its staff, and ensuring that its computer systems, networks, and protocols adequately protected the Private Information of Plaintiffs and Class members.

63. Defendant's wrongful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system to reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect Plaintiffs' and Class members' Private Information;

c. Failing to implement updates and patches in a timely manner;

d. Failing to properly monitor third-party data security systems for existing intrusions, brute-force attempts, and clearing of event logs;

e. Failing to ensure that all employees and third parties apply all available and necessary security updates;

f. Failing to ensure that all employees and third parties install the latest software patches, update their firewalls, check user account privileges, and ensure proper security practices;

g. Failing to ensure that all employees and third parties practice the principle of least-privilege and maintain credential hygiene;

h. Failing to avoid the use of domain-wide, admin-level service accounts;

i. Failing to adequately oversee employees and third-party vendors;

j. Failing to ensure that all employees and third parties employ or enforce the use of strong, randomized, just-in-time local administrator passwords; and

k. Failing to properly train and supervise employees and third parties in the proper handling of inbound emails.

64. Upon information and belief, as the result of allowing its computer systems to fall into dire need of security upgrading and its inadequate procedures for handling cybersecurity threats, Defendant failed to safeguard Plaintiffs' and Class members' Private Information.

65. Accordingly, as further detailed herein, Plaintiffs and Class members now face a substantial, increased, and immediate risk of fraud, identity theft, and the disclosure of their most sensitive and deeply personal information.

### *G. Data Breaches Are Harmful and Disruptive*

66. The United States Government Accountability Office ("GAO") released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft may face "substantial costs and time to repair the damage to their good name and credit record."[8]

67. That is because all victims of a data breach may be exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal Private Information is to monetize it because there is (unfortunately) a market for Private Information, like the Private

[8] U.S. Gov't Accountability Office, GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007)*, https://www.gao.gov/assets/gao-07-737.pdf (last visited Nov. 10, 2026).

Information compromised by the Data Breach.

68. Cybercriminals do this by selling the spoils of their cyberattacks on the illegal market to identity thieves who desire to extort and harass victims, and to take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the greater the number of accurate individual pieces of data an identity thief obtains regarding a person, the easier it is for that thief to take on the victim's identity, or otherwise to harass or track the victim.

69. For example, armed with only a name and a date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information regarding a victim's identity, such as a person's login credentials. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls, deceptive text messages, and phishing emails.

70. Because of the threat of these harms, the FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach such as the Data Breach at issue here, including contacting one of the credit bureaus to place a fraud alert (and potentially obtaining an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.

71. Theft of Private Information is gravely serious. Private Information is an extremely valuable property right.

72. Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious

risk-to-reward analysis illustrates that Private Information has considerable market value.

73. According to the GAO:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

GAO Report at 29.

74. Private information, such as the Private Information compromised in the Data Breach, is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years. The private information of consumers remains of high value to criminals, as evidenced by the prices paid through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, certain sets of private information can be sold at a price from $40 to $200. Social Security numbers and government-issued ID numbers are particularly valuable. Clearly, all this data has real value – which is why it is often targeted and stolen in the first place.

75. On information and belief, Plaintiffs' and Class members' Private Information compromised in the Data Breach is currently in the hands of the threat actor, which has published it on an underground forum, placing Plaintiffs and Class members at a substantial imminent risk of injury, including an increased risk of fraud and identity theft for many years into the future.

76. Thus, Plaintiffs and Class members must vigilantly monitor their financial accounts and other indicators of identity theft (*e.g.*, the mail, email, etc.) for many years to come.

***H. Harm to Plaintiffs and the Class***

77. Plaintiffs and Class members have suffered or will suffer actual injury from having their Private Information compromised as a result of the Data Breach, including, but not limited

to, as follows: (i) the theft of their Private Information by cybercriminals who have published it on an underground forum; (ii) damage to and diminution in the value of their Private Information, a form of property that Defendant obtained from Plaintiffs and Class members; (iii) violation of their privacy, including the unauthorized acquisition of their highly sensitive Private Information by the threat actor; (iv) present, imminent, and impending injury arising from the increased risk of identity theft and fraud; and (v) actual and potential out-of-pocket losses, including the loss of time and the loss of money.

## V. CLASS ACTION ALLEGATIONS

78. Plaintiffs bring this nationwide class action on behalf of themselves and all others similarly situated pursuant to Rules 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. The "Class" that Plaintiffs seek to represent is defined as follows:

> All persons whose Private Information was maintained by Defendant and was compromised in the Data Breach.

79. Excluded from the Class are Defendant and Defendant's subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

80. Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

81. **Numerosity**. Although Defendant has not publicly disclosed the total number of individuals affected by the Data Breach, Defendant enrolled 38,093 students in fall 2024 and reports 460,478 living alumni, the threat actor claims to hold more than 2 million rows of data, and on information and belief the Data Breach compromised the Private Information of tens or hundreds of thousands of individuals nationwide. Accordingly, the Class is so numerous that joinder of all members is impracticable.

82. **Commonality**. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a. Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class members' Private Information;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether Defendant owed a duty to Plaintiffs and Class members to safeguard their Private Information;

f. Whether Defendant breached its duties to Plaintiffs and Class members to safeguard their Private Information;

g. Whether computer hackers / cybercriminals obtained Plaintiffs' and Class members' Private Information in the Data Breach;

h. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i. Whether Plaintiffs and Class members suffered legally cognizable damages as a result of Defendant's misconduct;

j. Whether Defendant's acts, inactions, and practices complained of herein amount to a breach of contract and/or common law negligence;

k. Whether Defendant failed to provide notice of the Data Breach in a timely and proper manner; and

l. Whether Plaintiffs and Class members are entitled to compensatory damages, exemplary damages, punitive damages, equitable relief, and/or injunctive relief.

83. **Typicality**. Plaintiffs' claims are typical of those of other Class members because

Plaintiffs' Private Information, like that of every other Class member, was compromised by the Data Breach. Further, Plaintiffs, like all Class members, were injured by Defendant's uniform conduct. Plaintiffs are advancing the same claims and legal theories individually and on behalf of all other Class members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and those of other Class members arise from the same operative facts and are based on the same legal theories.

84. **Adequacy of Representation**. Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have no disabling or disqualifying conflicts of interest that would be antagonistic to those of the other members of the Class. The damages and infringement of rights that Plaintiffs suffered are typical of those suffered by other Class members, and Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class. Plaintiffs have a genuine personal interest, not a mere technical interest, in the outcome of this Action. Plaintiffs have retained counsel experienced in complex class action litigation, including, but not limited to, data privacy class action litigation, and Plaintiffs intend to prosecute this Action vigorously. Therefore, Plaintiffs can and will fairly and adequately protect and represent the interests of the Class.

85. **Superiority of Class Action**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of numerous individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the Class's common issues to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based upon an identical set of facts. Without a class action, it is likely that many members of the Class will remain unaware of the claims they may possess.

86. The litigation of the claims brought herein is manageable. Defendant's uniform

conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class members – whose names and contact information are maintained in Defendant's student, employment, and business records – demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action. This proposed class action does not present any unique management difficulties.

87. Adequate notice can be given to Class members directly using information maintained in Defendant's records.

88. **Predominance**. The issues in this Action are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Defendant has engaged in a common course of conduct toward Plaintiffs and Class members. The common issues arising from Defendant's conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these issues in a single action has important and desirable advantages of judicial economy.

89. **Rule 23(b)(2)**. Defendant has acted or refused to act on grounds generally applicable to the Class, including by failing to implement reasonable data security measures, so that final injunctive relief and corresponding declaratory relief are appropriate with respect to the Class as a whole.

90. **Issue Certification**. Alternatively, particular issues are appropriate for certification under Rule 23(c)(4), including whether Defendant owed Class members a duty to safeguard their Private Information, whether Defendant breached that duty, and whether Defendant's data security practices were consistent with industry standards.

## COUNT I

## NEGLIGENCE

91. Plaintiffs repeat and reallege paragraphs 1-77 as if fully set forth herein.

92. Plaintiffs and Class members provided their Private Information to Defendant as a condition of their enrollment at or employment with Defendant.

93. Defendant owed a duty to Plaintiffs and Class members to exercise reasonable care in securing, safeguarding, storing, and protecting the Private Information of Plaintiffs and Class members – which Defendant collected from Plaintiffs and Class members as a condition of their enrollment or employment with Boston University – from being compromised, lost, stolen, accessed, or misused by unauthorized parties.

94. This duty included obligations to take reasonable steps to prevent disclosure of the Private Information, and to safeguard the information from theft. Defendant's duties included the responsibility to design, implement, and monitor its data security systems, policies, and processes to protect against reasonably foreseeable data breaches such as this Data Breach.

95. Defendant owed a duty of care to Plaintiffs and Class members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, its policies and procedures, and the personnel responsible for them adequately protected the Private Information.

96. Defendant owed a duty of care to safeguard the Private Information due to the foreseeable risk of data breaches and the severe consequences that would result from its failure to safeguard Private Information.

97. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and those individuals who entrusted Defendant with their Private Information, which duty is recognized by common law.

98. In addition, the standard of reasonable care is informed by Section 5 of the FTCA, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

99. Defendant's duty to use reasonable care in protecting Private Information arose under common law and is informed by industry standards to protect Private Information that it acquires, maintains, or stores.

100. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and Class members could and would suffer if their Private Information were wrongfully disclosed.

101. Defendant had a special relationship with Plaintiffs and Class members. Plaintiffs' and Class members' willingness to entrust Defendant with Plaintiffs' and Class members' Private Information as a condition of their enrollment or employment was predicated on the understanding that Defendant would take adequate security precautions to protect that Private Information.

102. By assuming the responsibility to collect and store this data, Defendant had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

103. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiffs' and Class members' Private Information, as alleged and discussed above.

104. It was foreseeable that Defendant's failure to use reasonable measures to protect Class members' Private Information would result in injury to Plaintiffs and Class members. Further, the breach of security was reasonably foreseeable given the known high frequency of

cyberattacks and data breaches against companies that have custody of Private Information.

105. The imposition of a duty of care on Defendant to safeguard the Private Information it maintained, transferred, stored, or otherwise used is appropriate because any (minimal to non-existent) social utility of Defendant's conduct in failing to protect the Private Information is outweighed by the injuries suffered by Plaintiffs and Class members as a result of the Data Breach.

106. As a direct and proximate result of Defendant's negligence, Plaintiffs and Class members are at a current and ongoing imminent risk of identity theft, and Plaintiffs and Class members have sustained or are reasonably certain to sustain compensatory damages, including the following: (i) invasion of privacy; (ii) financial out-of-pocket costs incurred mitigating the material risk and imminent threat of identity theft; (iii) loss of time and loss of productivity incurred mitigating the material risk and imminent threat of identity theft; (iv) financial out-of-pocket costs incurred due to actual identity theft; (v) loss of time incurred due to actual identity theft; (vi) loss of time due to increased spam and targeted marketing emails; (vii) diminution of value of their Private Information; (viii) future costs of identity theft monitoring and/or credit monitoring; (ix) anxiety, annoyance, and nuisance; and (x) the continued risk to Private Information, which remains in Defendant's and the threat actor's respective control, and which is subject to further breaches, including for so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class members' Private Information.

107. Plaintiffs and Class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

## COUNT II

## BREACH OF IMPLIED CONTRACT

108. Plaintiffs repeat and reallege paragraphs 1-77 as if fully set forth herein.

109. In connection with their enrollment at or employment with Boston University,

Plaintiffs and Class members entrusted Defendant with their Private Information.

110. Defendant had an implied contract with Plaintiffs and Class members that it would protect the Private Information it collected from them.

111. Plaintiffs and Class members were required to deliver their Private Information to Defendant as a condition of their enrollment or employment with Boston University. In doing so, they were of the belief that this information would be safely guarded.

112. Defendant accepted possession of Plaintiffs' and Class members' Private Information for the purpose of providing educational services to them or employing them.

113. Through Defendant's enrollment or employment of Plaintiffs and Class members, it knew or should have known that it must protect Plaintiffs' and Class members' confidential Private Information in accordance with industry best practices.

114. Pursuant to these implied contracts, Defendant agreed to certain implied promises to Plaintiffs and Class members, including but not limited to the following: (i) taking steps to ensure that anyone who is granted access to Private Information also protects the confidentiality of that data; (ii) taking steps to ensure that the Private Information placed in the control of Defendant's employees is restricted and limited only to achieve authorized business purposes; (iii) restricting Private Information access only to employees and/or agents who are qualified and trained; (iv) designing and implementing appropriate retention policies to protect Private Information; (v) applying or requiring proper encryption and/or the separation of different data sets containing Private Information; (vi) implementing multifactor authentication for access to Private Information; and (vii) taking other steps to protect against foreseeable breaches.

115. By entering into such implied contract, Plaintiffs and Class members reasonably believed and expected that Defendant's data security practices complied with relevant laws and

regulations and were consistent with industry standards.

116. Defendant violated these implied contracts and these implied promises by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class members' Private Information.

117. Plaintiffs' and Class members' Private Information would not have been entrusted to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

118. Plaintiffs and Class members fully and adequately performed their obligations under their implied contracts with Defendant.

119. Plaintiffs and Class members have been damaged by Defendant's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein. Plaintiffs and Class members seek damages, including restitution, actual damages, nominal damages, and any other awardable form of damages, in an amount to be proven at trial.

## COUNT III

## DECLARATORY JUDGMENT

120. Plaintiffs repeat and reallege paragraphs 1-77 as if fully set forth herein.

121. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights, statuses, and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of federal and state law as described in this Complaint.

122. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiffs' and Class members' Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and Class members from further

data breaches that compromise their Private Information. Plaintiffs allege that Defendant's data security measures remain inadequate. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of Plaintiffs' Private Information and remain at imminent risk that further compromises of Plaintiffs' Private Information will occur in the future.

123. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owes a legal duty to secure Private Information and to timely notify impacted individuals of a data breach under the common law and state statutes; and

b. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure Private Information in its possession.

124. This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect Private Information in Defendant's data network.

125. If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and Plaintiffs will be forced to bring multiple lawsuits to rectify the same conduct.

126. The hardship to Plaintiffs if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiffs will likely be subjected to substantial identity theft and other damages. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable protective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

127. Issuance of the requested injunction is in the public interest. Such an injunction

would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiffs and Class members whose confidential information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief as follows:

A. For an Order certifying this case as a class action and appointing Plaintiffs and Plaintiffs' counsel to represent the Class;

B. For an award of actual damages, exemplary damages, punitive damages, compensatory damages, and nominal damages, in an amount to be determined, as allowable by law;

C. For injunctive and other equitable relief to ensure the protection of the sensitive information of Plaintiffs and the Class, which remains in Defendant's possession;

D. For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

E. Pre- and post-judgment interest on any amounts awarded; and

F. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable.

DATED: November 11, 2026

Respectfully submitted,

*<u>/s/ Mark A. Cianci</u>*
Mark A. Cianci (MA Bar No. 680105)
**ISRAEL DAVID LLC**
399 Boylston Street, Floor 6, Suite 23
Boston, Massachusetts 02116
Telephone: (617) 295-7771
E-mail: mark.cianci@davidllc.com

Israel David (*pro hac vice* forthcoming)
Adam M. Harris (*pro hac vice* forthcoming)
**ISRAEL DAVID LLC**
60 Broad Street, Suite 2900
New York, New York 10004
Telephone: (212) 350-8850
israel.david@davidllc.com
adam.harris@davidllc.com

*Attorneys for Plaintiffs and the Proposed Class*